**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

SYDNEY P. COMEAU,

　　　　　　　　　　　　　　　　CASE NO. 15-10650

　　　　　*Plaintiff*,　　　　　　MAGISTRATE JUDGE PATRICIA T. MORRIS

*v.*

COMMISSIONER OF SOCIAL SECURITY,

　　　　　*Defendant*.

_____/

**MAGISTRATE JUDGE'S OPINION AND ORDER ON**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 15, 17)**

**A.　　Introduction and Procedural History**

This is an action for judicial review of a final decision by the Commissioner of

Social Security ("Commissioner") denying Plaintiff Sydney Comeau's ("Comeau") claim

for disability benefits under the Disability Insurance Benefits ("DIB") program of Title

II, 42 U.S.C. § 401 *et seq.* and the Supplemental Security Income ("SSI") program of

Title XVI, 42 U.S.C. § 1381 *et seq.* (Doc. 1; Tr. 1-3). The case is before the undersigned

magistrate judge pursuant to the parties' consent under 28 U.S.C. § 636(c), E.D. Mich.

LR 72.1(b)(3), and by Notice of Reference. (Docs. 19, 20, 21). The matter is currently

before the Court on cross-motions for summary judgment. (Docs. 15, 17).

Comeau was fifty-eight years old as of his date of alleged disability. (Tr. 16). His

claims were denied initially on July 11, 2012. (Tr. 83, 88). Comeau requested a hearing

before an Administrative Law Judge ("ALJ"), which took place before ALJ Ethel Revels

on July 22, 2013. (Tr. 26). Comeau, represented by attorney Kiel J. Roeschke, testified,

as did vocational expert ("VE") James Fuller. (*Id*.). On October 25, 2013, the ALJ issued a written decision finding Comeau not disabled. (Tr. 11-25). On January 26, 2015, the Appeals Council denied review. (Tr. 1-3). Comeau filed for judicial review of that decision on February 20, 2015. (Doc. 1).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and

2

even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C.   Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'"

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The

Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:   If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her
> past relevant work, if other work exists in the national
> economy that plaintiff can perform, in view of his or her age,
> education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Comeau not disabled under the Act. (Tr. 21). The ALJ found at Step One that Comeau had not engaged in substantial gainful activity following the alleged onset date, February 7, 2012. (Tr. 16). At Step Two, the ALJ concluded that Comeau had the following severe impairments: substance abuse disorder, chronic bronchitis, coronary artery disease, diabetes mellitus, and obesity. (Tr. 16). At Step Three, the ALJ found that Comeau's combination of

4

impairments did not meet or equal one of the listings in the regulations. (Tr. 17). The ALJ then found that Comeau had the residual functional capacity ("RFC") to perform light work, except that Comeau "needs a job that does not require climbing ladders, ropes or scaffolds; no crawling; occasional climbing stairs and ramps, balancing, stooping, kneeling or crouching; relatively clean air work environment; no work around sharp objects or at hazardous heights or around dangerous machinery." (Tr. 18). At Step Four, the ALJ found that Comeau was able to return to his past relevant work as a dispatcher. (Tr. 20).

### E.    Administrative Record

#### 1.    Medical Evidence

Comeau's medical record is somewhat lengthy, and is more comprehensibly reviewed condition-by-condition rather than chronologically.

##### a.    Breathing Difficulties

Comeau struggled with recurrent bronchitis in November 2010. (Tr. 342-43, 500, 896). Signs of chronic obstructive pulmonary disorder were also noted at that time. (Tr. 867). Comeau had difficulty breathing secondary to bronchitis in January 2012. (Tr. 339, 379-81, 496, 707-08, 730). In February 2012 Comeau was prescribed with Albuterol, an inhalable medication to treat shortness of breath. (Tr. 650). Chronic emphysematous changes were seen in August 2012. (Tr. 476).

5

**b.      Coronary artery disease**

Comeau underwent surgery for the implantation of a bioprosthetic aortic valve in 2005. (Tr. 408). He experienced chest tightness and pressure while mowing the lawn in September 2007. (Tr. 294). Comeau underwent an aortic valve replacement in November 2007 to correct aortic stenosis and an ascending aortic aneurysm. (Tr. 253, 282). In November 2007 and January 2008 it was noted that Comeau suffered atrial flutter with a rapid ventricular rate, but was "doing well following his aortic valve replacement." (Tr. 256, 275-80). In March 2008 his heart produced an ejection fraction of seventy-five percent, he had minimal regurgitations of the mitral an aortic valve; he was found to have "done well" with recovery from surgery. (Tr. 254).

In November 2010 Comeau was admitted to the hospital for atrial fibrillation with rapid ventricular response, and continued to suffer atrial fibrillation at the time of discharge. (Tr. 500). It was also found that Comeau suffered from congestive heart failure exacerbation, but was stable by the time of discharge. (*Id.*).

In January 2011 Comeau showed signs of heart enlargement, along with prominent central vascular markings suggesting either evolving congestive heart failure, pulmonary venous congestion, or pulmonary hypertension, along with mild cardiomegaly. (Tr. 455).

In March 2011 Comeau's heart showed a mild restrictive ventilator defect, but its diffusion capacity was within normal limits. (Tr. 450). Comeau also showed signs of arrhythmias in the form of baseline fibrillation stress, along with abnormal perfusion with

6

cardiomyopathy. (Tr. 453). He was again diagnosed as being in atrial fibrillation in April 2011. (Tr. 563).

In February 2012 Comeau was found to have an irregular heart beat with a heart murmur. (Tr. 354, 405). His hypertension was controlled. (Tr. 355). In August 2012 his bilateral costophrenic angles were clear, but showed mild cardiomegaly, and slight interval improvement. (Tr. 476).

In August 2012, Comeau's heart produced an ejection fraction of thirty-seven percent. (Tr. 624).

In October 2012 Comeau's heart showed mild global left ventricular and right ventricular hypokinesis, with an ejection fraction of about fifty percent. (Tr. 473). He was diagnosed with ischemic cardiomyopathy and atrial fibrillation. (Tr. 512). Hypertension was also noted. (Tr. 520).

In February 2013 Comeau's atrial fibrillation was noted to be "controlled, but still in A-fib." (Tr. 654). He was "doing well asymptomatic" at that time. (*Id*.).

### c.    Diabetes

Comeau experienced hypoglycemia following surgery in November and December 2007, requiring hospitalization. (Tr. 265-74).

### d.    Obesity

Comeau was found to be obese or morbidly obese throughout his medical record. In October 2007 he weighed 251 pounds and stood five foot ten inches tall. (Tr. 294). In January 2008 Comeau was found to weigh 257 pounds. (Tr. 256). In February 2012 he

7

weighed 259 pounds. (Tr. 355). By the time of the hearing, Comeau weighed 291 pounds. (Tr. 16). These records place Comeau's body mass index somewhere between 36 and 41.7; a BMI of 30 or greater indicates obesity, and a BMI of 40 or greater is termed "extreme" obesity. *See* SSR 02-1p.

### e.     Veteran's Administration Records

Comeau, a veteran, treated with physicians at the Veteran's Administration ("VA") on numerous occasions between 2010 and 2012. (Tr. 322-23). A summary of his health produced in 2012 establishes, in relevant part, that he suffered from diabetes, hyperlipidemia, heart valve replacement, tobacco use disorder, obesity, atrial fibrillation, congestive heart failure, long term use of anticoagulants, chronic ischemic heart disease, other nonthrombocytopenic purpuras, venous (peripheral) insufficiency, acute upper respiratory infections, and other forms of chronic ischemic heart disease. (Tr. 323).

On August 24, 2012, Dr. Sudhir G. Rao of the VA prepared a report prepared in which he determined that Comeau was disabled. (Tr. 623-24). Dr. Rao noted that Comeau was under treatment for coronary artery disease with "continued chest pain and shortness of breath with minimal activities;" congestive heart failure resulting in shortness of breath upon minimal activities; difficulty with strenuous activity; atrial fibrillation producing intermittent dizziness upon walking, lifting, or performing "any activity," and an ejection fraction of thirty-seven percent. Dr. Rao noted that Comeau lost his job in February 2012 by way of a layoff, but found that, due to his various medical conditions, Comeau was unemployable due to disability as of August 2012. (Tr. 624).

8

However, VA records also indicate that Comeau was applying for jobs and unemployment assistance in March 2012. (Tr. 648). On August 28, 2012, Comeau was approved for disability by the VA because he was "unable to secure and follow a substantially gainful occupation due to disability." (Tr. 1023). Specifically, Comeau was disabled by his coronary artery disease, status post myocardial infraction, congestive heart failure. (*Id*.).

### f.    Consultative evaluations

On June 20, 2012, Comeau sought a psychological consultative examination from licensed psychologist Hugh Bray. (Tr. 466). Bray found that Comeau's ability to relate to others was unimpaired, that his ability to understand, remember, and carry out tasks was mildly impaired, that his ability to maintain concentration, persistence, pace, and effort was mildly impaired, and that his ability to withstand workplace stress was mildly to moderately impaired. (*Id*.).

In March 2013 Comeau underwent a consultative evaluation from the Rehabilitation Institute of Michigan. (Tr. 942-52). Comeau was found to retain the ability to perform work within the sedentary range, exerting up to ten pounds of force occasionally and sitting most of the time. (Tr. 942). Comeau was found to have "self-limited" on only seven percent of the fourteen tasks tested, indicating that he was motivated and that the tests produced valid results. (*Id*.). Comeau complained of shoulder pain, left knee pain, and shortness of breath. (Tr. 943). Comeau grimaced, rubbed his shoulder, had an antalgic gait, and experienced shortness of breath, which was consistent

with his movement patterns and correlated with his self-reported pain. (*Id*.). Comeau could tolerate sitting work constantly, but could tolerate standing work only frequently, elevated work occasionally, and lowered work occasionally. (Tr. 945). Comeau's mobility tolerance was limited to "occasionally" in terms of stair climbing, repetitive squatting, walking, and trunk rotation. (*Id*.). Comeau could lift twenty-five pounds to waist level occasionally, and could lift no weight from waist to eye level. (Tr. 946).

## 2.   Application Reports and Administrative Hearing

### a.   Comeau's Function Report

Comeau completed a function report on May 16, 2012, in which he asserted that he was disabled from work by heart problems, breathing issues, diabetes, and vascular issues. (Tr. 227). Comeau's daily activities included watching television and "walk[ing] very little." (Tr. 228). Comeau prepared meals daily, and indicated that he prepared both "complete meals" and "microwave meals." (Tr. 229). As to chores, he washed laundry once weekly for two to three hours, but was prevented from performing other chores by his heart and breathing problems. (*Id*.). Comeau could walk short distances and use public transportation, but did not drive due to a suspended license. (Tr. 230). He shopped once or twice monthly for groceries, which took two three hours due to "shortness of breath." (*Id*.). Comeau reported that his illnesses were "getting worse" in terms of breathing difficulties, heart-related symptoms, and diabetic maladies. (Tr. 231). He received visits from family, but reported leaving home only for the purpose of doctor appointments. (*Id*.). Comeau wrote that he experienced difficulty lifting, squatting,

10

bending, standing, reaching, walking, climbing, seeing, completing tasks, concentrating, and understanding. (Tr. 232). He could walk only "very short" distances before needing a rest, and could stand for about thirty minutes. (*Id.*). Comeau used a "breathing machine" and inhaler as needed. (Tr. 233).

### b.      Comeau's Testimony at the Administrative Hearing

At the July 22, 2013, hearing before the ALJ, Comeau testified that he previously worked as a limousine driver for four years, and as a limousine inspector and dispatcher for the last five years of his employment. (Tr. 31). His work as a dispatcher involved assigning drivers, detailing limousines, inspecting vehicles for cleanliness, and ensuring that "all the [limousine] coolers [were] iced." (Tr. 32). Comeau was on his feet for about two hours daily in the latter position. (Tr. 47). His dispatcher work also involved receiving "calls"[1] from limousine drivers to ensure that the drivers arrived on time. (Tr. 33). The work also involved "us[ing] computers to make Mapquest and stuff for the drivers just to let them know how to get to their destinations . . . ." (Tr. 50). He reported experiencing stress as the result of his "stickler" manager, and asserted that he could no longer "handle the stress" of that position "at all." (Tr. 47-49). Comeau testified that he was fired from his work as a dispatcher because his services were no longer needed, but that he was experiencing stress, congestive heart failure, and atrial fibrillation at that time

---

[1] Comeau also testified that these calls would be directed to "[t]he office itself," and that "[a]nybody in the office" could answer the calls. (Tr. 34). It is thus unclear what portion of Comeau's working day involved taking such calls.

as well. (Tr. 38). In particular, Comeau stated that his shortness of breath and bouts of diabetes-related-hypoglycemia interfered with his ability to perform his job. (*Id*.).

Comeau testified that he experienced shortness of breath two to three times daily, and found it necessary to stop twice on his six-block walk into court. (Tr. 39). Comeau stated that he could walk about one block before stopping, and became dizzy upon standing for more than twenty minutes. (*Id*.). Comeau's blood sugar was uncontrolled at the time of the hearing despite taking insulin injections three times daily. (*Id*.). He elevated his legs during sleep and sometimes during the day to alleviate muscle spasms. (Tr. 40). He was in "constant pain" and laid down once or twice daily for ninety minutes to two hours. (Tr. 41). Comeau stated that he could comfortably lift only about ten pounds, and avoided lifting anything over twenty pounds, due to his heart condition and valve replacement, and because when he lifted anything in the twenty-pound range he could "feel it in [his] chest." (Tr. 41-42). Comeau also spoke of some pain in his shoulder and knee resulting from a motor vehicle accident. (Tr. 43). As to household chores, Comeau attested to vacuuming, dusting, and keeping up his apartment to the extent of his abilities. (Tr. 44). However, he required breaks during these cleaning sessions due to shortness of breath. (*Id*.). Comeau had some trouble sleeping due to his medication, and woke up frequently during the night. (Tr. 45-46).

### c.       The VE's Testimony at the Administrative Hearing

The ALJ then employed a VE to determine Comeau's ability to perform work. The ALJ first asked the VE to characterize Comeau's work as a dispatcher. (Tr. 33). The VE

found that this work was "a combination" position because it involved both dispatching and inspection. (*Id.*). The VE found that Comeau's past work was a "relatively unique situation," one for which there was not a clear listing in the Dictionary of Occupational Titles. (Tr. 34-37). As a result, the VE recommended that the position be considered a joint dispatcher and inspector position. (Tr. 37-38). The VE stated that Comeau's past work as a limousine driver was a light, semi-skilled position, and his position was skilled and light insofar as he was an automobile inspector, and semi-skilled and sedentary insofar as he was a dispatcher. (Tr. 50).

The ALJ then asked the VE to consider a hypothetical worker of Comeau's age, education level, and work experience, who could do light work, but who required a sit/stand option, and who could only occasionally climb stairs and ramps, balance, stoop, kneel, and crouch; could not crawl or climb ladders, ropes, or scaffolds; who required a "relatively clean air work environment" and could not work near sharp objects, hazardous heights, or dangerous machinery. (Tr. 51-52). The VE found that such a worker could perform work as a light assembler (160,00 jobs nationally), packager (120,000 jobs), or inspector (80,000 jobs). (Tr. 52).

The ALJ then asked whether a worker bearing all of the prior restrictions, but who also was limited to simple, routine jobs at the SVP-1 or SVP-2 skill level, would be able to perform remunerative, competitive work. (Tr. 52). The VE found that these restrictions would not limit the worker's ability to perform the aforementioned positions. (Tr. 52-53).

13

Returning to the first hypothetical, the ALJ asked whether the worker would be able to perform Comeau's past relevant work; the VE found that such a worker could not perform Comeau's past relevant work as generally performed. (Tr. 52-53). The sit/stand option and postural limitations would be preclusive because a dispatcher cannot generally stand in the performance of that position due to the use of a computer and microphone. (Tr. 53). The ALJ stated that she was "[n]ot concerned with how [Comeau] performed it," but was "trying to figure out why one could not perform it as generally performed because with computers . . . you can adjust the table." (Tr. 54). The ALJ rejected the VE's conclusion that a keyboard can generally only be operated while seated. (*Id.*). The ALJ then somewhat abruptly terminated the hearing, and did further inquire into the hypothetical worker's ability to perform Comeau's past relevant work as actually performed. (Tr. 55).

## F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both     "acceptable"     and     non-

14

acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case

record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

16

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a

17

claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)    Treatment, other than medication, . . . received for relief of . . . pain;
(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20

18

C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.     Analysis

Comeau argues that the ALJ erred in the following ways: 1) Failing to discuss the VA's disability determination; 2) Failing to find that Comeau's past relevant work as a dispatcher/automobile inspector was a composite job, and failing to evaluate the position as it was actually performed 3) Failing to discuss Comeau's credibility. (Doc. 15 at 13-18). These arguments will be addressed in turn.

### 1.     *The ALJ Erred by Failing to Discuss the VA Disability Determination*

The Sixth Circuit has found that "[a] disability rating from the Veteran's Administration is entitled to consideration," but has "not specified the weight such a determination should carry when determining social security disability eligibility." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013), citing *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir. 1984); accord SSR 06–03, 2006 WL 2329939, at *3 (Aug. 9, 2006) ("Evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.").

In this case, the ALJ failed to address Comeau's VA disability determination in any way. Failure to properly address a VA disability determination is remandable error,

19

and courts in this circuit have regularly remanded decisions suffering from that error. *See, e.g.*, *King v. Comm'r of Soc. Sec.*, 779 F. Supp. 2d 721, 727 (E.D. Mich. 2011) (remanding where the ALJ asserted that she "does consider" the VA disability determination, but did not explain the weight accorded to it, or the reasons for according such weight); *Rivett v. Colvin*, No. 2:11-CV-00111, 2014 WL 5822858, at *8 (M.D. Tenn. Nov. 7, 2014) ("[C]ourts have routinely remanded cases in which the ALJ failed to properly weigh a governmental or nongovernmental agency's disability decision or failed to articulate valid reasons for rejecting the decision.").

The Commissioner recognizes that the ALJ's failure to discuss the VA disability determination was an "omission," but argues that this error does not merit remand. (Doc. 17 at 16). First, the Commissioner asserts that the ALJ considered all of the VA records which supported the VA's disability determination, thus remand would be an idle formality. (*Id*. at 19). This exception, if broadly applied, would swallow the rule, effectively excusing ALJs from their duty to assess the weight given to VA disability determinations by simply performing their coterminous duty to consider the totality of the medical evidence. Moreover, it is the duty of the ALJ, not the federal courts, to weigh the medical evidence and assess the weight given to opinions therein. *See Brown v. Colvin*, No. 3:13-1293, 2015 WL 752138, at *9 (M.D. Tenn. Feb. 23, 2015) ("The defendant's argument would place the Court in the ALJ's role of weighing the evidence and determining the credibility and meaning of the evidence.") report and recommendation adopted sub nom. *Brown v. Soc. Sec. Admin*., No. CIV. 3:13-1293, 2015 WL 1137866

20

(M.D. Tenn. Mar. 13, 2015); *Briskey v. Astrue*, No. 1:09-CV-2705, 2011 WL 672553, at *5 (N.D. Ohio Feb. 15, 2011) (holding that an ALJ's "recitation of the record evidence . . . did not obviate his duty to articulate the weight and supporting reasoning for his decision to reject the VA's determination."). The Court is ill equipped to play the role of the ALJ, and declines to do so here.

The Commissioner also argues that the ALJ's failure to address the VA disability determination was harmless because that determination "was not accompanied by any explanation or evidence, apart from a list of Plaintiff's impairments," and consequently "there is no way to tell from the document how the VA arrived at the determination of disability." (Doc. 17 at 18). There is no indication that the VA's disability determination in this matter is unusually terse or lacking in support when compared to other VA disability determinations. The Commissioner has not pointed to any distinguishing characteristics that would justify treating the ALJ's error in this case differently from the numerous decisions that have found remand appropriate. The VA disability determination in this case was rendered during Comeau's insured period, only a few months after his alleged onset date, and is highly relevant to his current claim for disability. While harmless error analysis may sometimes be appropriate where an ALJ fails to assess the weight that should be given to a VA disability determination, the Commissioner has failed to establish why this error falls closer to the exception than the rule. *See Allain v. Astrue*, No. 1:08-CV-214, 2009 WL 2516976, at *6 (E.D. Tenn. Aug. 13, 2009) (finding harmless error where the ALJ did not discuss a VA disability determination, but VA

21

physicians found that improvement was likely, and the ALJ's decision, rendered four years later, merely confirmed that the predicted improvement did occur).

### 2. *The ALJ Erred in Determining that Comeau Can Return to His Past Relevant Work*

Comeau next argues that the ALJ erred by "bifurcat[ing] Plaintiff's job requirements and then ultimately determin[ing] that Plaintiff can perform the least demanding component of that job." (Doc. 15 at 13). During the hearing, the VE found that Comeau's work as a dispatcher was semi-skilled and sedentary work, whereas the portion of his job involving automobile inspection was skilled and light work. (Tr. 50). Comeau testified that, when acting as a dispatcher, he maintained "a schedule of each driver and where they were supposed to be," which "was kept by paperwork" rather than on a computer. (*Id.*). However, Comeau also testified that "in the office, we would use computers to make Mapquest and stuff for the drivers . . . ." (Tr. 49-50).

At Step Four, a claimant is generally found disabled where he can return to his past work either as it was actually performed or as that position is generally performed in the national economy. SSR 82–61, 20 C.F.R. § 404.1560(b)(2). However, where a claimant's past relevant work is a "composite job," which has "significant elements of two or more occupations" and for which there is no equivalent in the DOT, his ability to return to that unique work situation must be "evaluated according to the particular facts of each individual case." SSR 82–61. Likewise, the Program Operations Manual System ("POMS"), a non-binding handbook produced for internal use at the Social Security

22

Administration, provides that "[a] composite job will not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'" POMS § DI 25005.020. A claimant is only capable of performing a past relevant composite job if he can perform each of the separate components of the position. *Hansen v. Comm'r of Soc. Sec.*, No. 13-13348, 2014 WL 5307133, at *8 (E.D. Mich. Oct. 16, 2014).

At the outset, it appears that Comeau's prior work as a limousine inspector/dispatcher was indeed a "composite job" as conceived of by the Social Security Rules. The VE specifically found that Comeau's work was "a combination" position that was "relatively unique," and which could not be accurately described by a listing in the Dictionary of Occupational Titles. (Tr. 34-37). The ALJ was thus required to determine whether Comeau could return to his work as an inspector/dispatcher as actually performed. Two problems become immediately apparent. First, the both the ALJ and VE appear to have improperly focused on Comeau's ability to perform his work as a dispatcher, to the exclusion of considering whether he could work as an inspector. Second, the ALJ does not appear to have elicited testimony from the VE sufficient to support the conclusions in her written decision. I address these errors in turn.

As noted above, it is not entirely clear from the transcript of the oral hearing whether the ALJ recognized her duty to consider both elements of Comeau's dual-duty past relevant work. (Tr. 53). The VE limited his responses to a discussion of Comeau's ability to perform work as a dispatcher, and said nothing of his ability to work as a

23

vehicle inspector. (Tr. 53-55). At Step Four of her decision, the ALJ states that Comeau "is capable of performing his past relevant work as a dispatcher." (Tr. 20). Yet Comeau did not work as a dispatcher, he worked as an inspector/dispatcher. The ALJ thus abandoned her duty to consider Comeau's past relevant work as a composite position, and instead improperly "deem[ed the] claimant capable of performing past relevant work by dividing the demand of a composite job into separate jobs and finding him capable of performing the less demanding of the two jobs." *Hansen*, No. 13-13348, 2014 WL 5307133, at *8 (quotation omitted). Where, as here, the ALJ fails at Step Four to properly determine whether a claimant can return to his or her past relevant composite work, and did not make an alternate Step Five finding, the case should be remanded for further proceedings. *Id*.

Similarly, the ALJ concludes in her decision that Comeau could return to his past relevant work "as actually performed," because, per her RFC finding, he was capable of performing light work with certain restrictions.[2] (Tr. 21). This conclusion is ostensibly based upon the VE's testimony at the oral hearing. (*Id*.). At the hearing, the VE testified that Comeau could not return to his work as a dispatcher as that position is generally performed because his need for a sit/stand option would interfere with the use of a computer and microphone. (*Id*.). It appears from the transcript of the oral hearing that the

---

[2] Those restrictions provide that Comeau "needs a job that does not require climbing ladders, ropes or scaffolds; no crawling; occasional climbing stairs and ramps, balancing, stooping, kneeling or crouching; relatively clean air work environment; no work around sharp objects or at hazardous heights or around dangerous machinery." (Tr. 18).

VE began to testify about whether Comeau could perform the work as it was actually performed, but the ALJ cut him off, stating that she was "[n]ot concerned with how he performed it." (Tr. 54).

It is unclear why the ALJ asserted that she was not concerned with Comeau's work as actually performed, and focused her questions to the VE on how the job would be generally performed, yet concluded in her decision that Comeau could perform the work as actually performed. In any case, at no point did the ALJ ask the VE whether the hypothetical worker could perform Comeau's past work as a limousine inspector/dispatcher as actually performed. An ALJ is, of course, not required to make use of a VE, thus the ALJ was empowered to discard the VE's testimony. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997). However, the ALJ's decision must nevertheless be supported by substantial evidence. *Sullivan*, 595 F. App'x at 506. The questions asked of Comeau at the hearing permit an inference that his work as a dispatcher involved receiving "calls," though it is unclear whether these calls were received by way of radio or telephone, and it is anyone's guess as to the percentage of the working day that was comprised of receiving these calls. (Tr. 33). The ALJ finds that Comeau's work "did not involve using a radio or computer, other than to generate a MapQuest printout," yet Comeau was never questioned as to the portion of his workday that involved generating these maps. (Tr. 21). The ALJ's finding that Comeau could return to his work as a Dispatcher is based largely on supposition and conjecture, and is consequently not supported by substantial evidence.

25

On remand, the ALJ should further inquire into the nature of Comeau's work as an inspector/dispatcher so that his ability to return to that work as performed can be properly evaluated in light of the duties of that position.

### 3. The ALJ's Credibility Determination is Not Supported by Substantial Evidence

Comeau next argues that the ALJ rendered a credibility determination not supported by substantial evidence. (Doc. 15 at 15-18). Comeau asserts that the ALJ's credibility determination was limited to a "boilerplate" finding that Comeau's assertions concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (*Id.* at 16-18). In reality, the ALJ referenced several factors relating to Comeau's credibility, which the Commissioner attempts to bolster by interpreting other findings as having some relation to credibility. However, as discussed below, the majority of these factors do not support the ALJ's finding that Comeau's allegations were not entirely credible.

First, the ALJ referenced Comeau's application for unemployment benefits after his date of alleged disability, indicating that Comeau inconsistently asserted that he was ready and able to work, yet was too disabled to work. (Tr. 17). The Sixth Circuit has found that filing simultaneous applications for unemployment and disability benefits is "inherently inconsistent," therefore this finding supports the ALJ's credibility determination. *See Logan v. Comm'r of Soc. Sec.*, No. 13-CV-12807, 2014 WL 2217235, at *3 (E.D. Mich. May 29, 2014) (quotation omitted).

26

The ALJ also referenced findings from the Rehabilitation Institute of Michigan, where it was found that Comeau could perform sedentary work, exerting up to ten pounds of force occasionally and sitting most of the time. (Tr. 20, 942). However, it is not clear that these records support the ALJ's RFC finding, given that the physical therapist producing those records found Comeau capable of only sedentary work, yet the ALJ concluded that the records supported a finding of light work. (Tr. 20, 942). Furthermore, those records demonstrate that Comeau "self-limited" his exertion at a rate at or below the average, that his alleged pain, shortness of a breath, and antalgic gait were supported by the objective evidence, and that Comeau could lift twenty-five pounds only to waist level. (Tr. 942-46).

In an attempt to bolster these relatively meager credibility findings, the Commissioner attempts to recast several of the ALJ's findings which do not clearly relate to credibility. The Commissioner first asserts that Comeau's credibility is challenged because the stress he suffered as a limousine/dispatcher was due to an overbearing boss rather than the work itself. (Tr. 19, Doc. 17 at 21). Comeau wrote in his function report that he was disabled in part due to his "illeness [sic] + stress" (Tr. 228), and in the hearing before the ALJ he forthrightly asserted that he experienced stress in his work as a limousine dispatcher because of "stress with the owner," his boss, who was a "stickler" (Tr. 38). The ALJ found that Comeau was mildly limited in terms of concentration persistence and pace, and found that Comeau's sole mental impairment was substance abuse disorder. (Tr. 16-17). Comeau has not challenged those findings, and does not

27

assert in his brief that he is disabled from work by any mental impairment. Credibility findings are, in essence, a determination that the claimant's statements do not comport with their prior statements, the objective evidence, or are in some other manner contradictory. The Commissioner has simply failed to present any inconsistency on this point.

The Commissioner also argues that Comeau's credibility is tarnished because he was unable to drive because of a license suspension arising out of a driving under the influence charge rather than because of an inability to tolerate driving. (Tr. 19, Doc. 17 at 21). Comeau wrote in his function report that he does not drive because of a "suspended license, no transportation no vehicle." (Tr. 230). At the hearing before the ALJ Comeau noted that his license was suspended due to having been charged with driving under the influence. (Tr. 44-45). At no point in the record does Comeau assert that he was unable to drive because of health issues, thus there is no inconsistency in his recognition that he does not drive because of a suspended license. While Comeau may have committed a morally reprehensible act by driving under the influence, that behavior has no bearing on his credibility regarding the intensity, persistence, and limiting effects of his symptoms. *See O'Hara v. Astrue*, No. C08-5526RBL-KLS, 2009 WL 1543637, at *12 (W.D. Wash. May 29, 2009) (distinguishing crimes involving a lack of honesty, including theft and passing back checks, from crimes which do not relate to honesty, and holding that only crimes in the former category are relevant to a claimant's credibility); *see also Alonzo v. Colvin*, No. 1:14-CV-00460-SKO, 2015 WL 5358151, at *18 (E.D. Cal. Sept. 14, 2015)

28

("Plaintiff contends the ALJ failed to explain how Plaintiff's past alcohol-related offenses diminished her overall credibility. Plaintiff's criminal history is not relevant simply because she has one.").

Finally, the Commissioner argues that Comeau's self-asserted activities of daily living are inconsistent with his claimed level of disability. (Doc. 17 at 19). Comeau admitted to "preparing complete meals and sandwiches, doing household chores such as laundry, going out every day, walking short distances, using public transportation, watching television, hosting visits from his family, and going grocery shopping." (*Id*. at 21). It is difficult to see how this limited set of low-intensity activities conflicts with Comeau's asserted level of disability. Comeau's primary complaints relate to chest pain and shortness of breath. (Tr. 38-44). Comeau asserted that he could walk only short distances due to shortness of breath (Tr. 39, 232), elevated his legs occasionally during the day (Tr. 40), could lift only about ten pounds comfortably (Tr. 41-42), and attempted to keep up with household chores like vacuuming and dusting, but required breaks during those activities to account for his shortness of breath (Tr. 44). Comeau reported grocery shopping only once or twice monthly, with his trips taking up to three hours due to shortness of breath, and that he did laundry weekly. (Tr. 229-30). Particularly where a claimant alleges that he is disabled primarily due to physical rather than mental limitations, it is difficult to see how the ability to sit, watch television, chat with friends, walk short distances, and perform a few, low-intensity household activities with breaks is inconsistent with a claim of disability. *See Allan v. Comm'r of Soc. Sec.*, No. 10-CV-

29

11651, 2011 WL 2670021, at *3 (E.D. Mich. July 8, 2011) (holding that "Plaintiff's ability to perform . . . limited, brief activities" including preparing meals, performing light household chores, watching television and maintaining social interaction, "all of which involve no prolonged movement and little to no exertion of energy—simply does not undercut the truthfulness of Plaintiff's allegations of pain.").

The ALJ therefore provided some reason to doubt Comeau's credibility insofar as he inconsistently applied for unemployment and disability benefits concurrently. However, the ALJ's credibility finding is not well supported with relation to the remaining findings. Upon remand, the ALJ is directed to reconsider Comeau's credibility in light of these findings.

### 4.    The ALJ Failed to Consider Comeau's Obesity

Finally, the Court notes that the ALJ erred by not giving proper consideration to Comeau's diagnosed obesity. While Comeau does not raise this issue in his brief, given that I have identified several other reasons to remand, I find that consideration of this additional error is appropriate. Because "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately," ALJs are instructed that they "must consider any additional and cumulative effects of obesity" when "determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q.

Where an ALJ fails to give any consideration to a claimant's obesity, remand may be appropriate. *See Maurer v. Colvin*, No. 14-CV-10136, 2015 WL 6550065, at *3 (E.D. Mich. Oct. 29, 2015) (remanding where "[a]t the hearing, the ALJ did not ask plaintiff how his weight affects his other symptoms or his ability to work, noting only that plaintiff "gained a few pounds" . . . and in his written decision, the ALJ did not mention plaintiff's obesity at all."); *Wallace v. Comm'r of Soc. Sec.*, No. 12-11548, 2013 WL 3467214, at *12 (E.D. Mich. July 10, 2013) (remanding where "the ALJ's narrative indicates that he did not consider the cumulative effect of Plaintiff's obesity-related impairments" and "focused little on the combined effect of the three obesity-related impairments that the Court has identified."). Consideration of obesity is particularly important where, as here, the claimant alleges disability resulting from shortness of breath and heart maladies, because of the toll that obesity can take on the respiratory and cardiovascular systems. *See Hamm v. Colvin*, No. CIV-14-359-SPS, 2016 WL 830029, at *4 (E.D. OK. Mar. 3, 2016) (noting the importance of considering "the impact that obesity can have on the respiratory system" given "the claimant's documented repeat problems related to shortness of breath"); *Murphy v. Colvin*, No. 10 C 607, 2013 WL 2589711, at *13 (N.D. Ill. June 11, 2013) ("It is one thing to have trouble standing and sitting because of a bad heart, it is another thing to have a bad heart supporting a body mass index in excess of 40.") (quotation omitted). While ALJs are not obligated to write out in full every element of the deliberative processes that go into their disability findings, an ALJ must do more than simply list obesity as a severe impairment without

31

any further consideration of the limiting effects of that condition. On remand, the ALJ should consider the impact of Comeau's obesity upon his other allegedly disabling conditions.

### H.    Conclusion

I find that the ALJ's decision, which ultimately became the final decision of the Commissioner, is not supported by substantial evidence. The ALJ's failure to consider the disability determination rendered by the VA is, on its own, sufficient to require remand. I also find that the ALJ erred by improperly finding at Step Four that Comeau could return to his past relevant work, that the ALJ's credibility assessment was insufficiently justified, and that the ALJ failed to evaluate the impact of Comeau's obesity.

### I.    Order

In light of the above findings, **IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 15) is **GRANTED**, the Commissioner's motion for summary judgment (Doc. 17) is **DENIED**, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). **IT IS SO ORDERED**.

Date:  March 30, 2016                           S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.


Date: March 30, 2016                    By s/Kristen Krawczyk
                                        Case Manager

33